58 CCPA

**Application of Kenneth W. RAREY.**
**Patent Appeal No. 8536.**

United States Court of Customs
and Patent Appeals.
June 3, 1971.

William H. Holt, Arlington, Va., (Diller, Brown, Ramik & Holt), Arlington, Va., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and LANDIS, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 12, 14 and 16–24, all the claims remaining in appellant's application serial No. 386,-183, filed July 30, 1964, for "Electrostatic Screen Printing with Conductive Particles." We affirm.

The appealed claims define a method and apparatus for electrostatic printing.

The specification states that prior-art electrostatic printing techniques utilized an electric field created between the printing screen and the substrate to be printed. Chargeable ink particles were placed on the screen by brushing or by gentle blowing. Once on the screen they acquired a charge and moved through the field to the substrate.

Appellant's specification states that his invention relates to an improved technique wherein a field is created between an ink source and the screen, thereby imparting a velocity to the particles before they reach the screen. Some of the particles pass through the pattern holes in the screen and continue on to the substrate, aided in this respect, if desired, by a second electric field, between the screen and a back electrode located behind the substrate. This two-field arrangement can be created by a voltage divider, such that the screen is placed at an intermediate potential between that of the base electrode and that of the back electrode.

The specification further discloses that the base electrode may be an endless belt which picks up ink particles from a reservoir and moves them to positions under the screen, whereupon a switch is closed, the electric fields are created, and the particles move through the screen to the substrate.

Appellant states that his technique eliminates the necessity for a field between the screen and the substrate, although, as indicated above, such a field can be used if desired. He also states that "the orientation of the velocity vector [i. e., perpendicular to the plane of the screen] insures minimal pattern distortion."

Claims 16, 22 and 12 are typical.

16. Apparatus for printing upon a substrate, said apparatus comprising an electrically conductive base electrode and an electrically conductive stencil screen, a high voltage energy source, said base electrode and stencil screen being connected to opposite sides of said energy source, and a

continuous layer of electrically conductive particles of coating material carried by said base electrode along the full extent of said stencil screen, said stencil screen being interposed between said base electrode and said substrate, and a back electrode, said back electrode being spaced from said stencil screen by said substrate, said back electrode being connected to said high voltage energy source and having the same polarity as said stencil screen, and means whereby the potential difference between said base electrode and said back electrode is greater than the potential difference between said base electrode and said stencil screen.

22. Electrostatic printing apparatus comprising a base electrode and an electrically conductive screen stencil, said base electrode comprising an endless conductive belt disposed in spaced relation to said screen stencil, a high voltage energy source connected between said screen stencil and said endless conductive belt for creating an electric field therebetween, means for applying a layer of toner particles upon said endless conductive belt on the side thereof adjacent to said screen stencil, and means for rotating said endless conductive belt for maintaining a continuous supply of toner particles thereupon throughout the full extent of that portion of said belt disposed adjacent said screen stencil.

12. Apparatus for printing upon a substrate, said apparatus comprising an electrically conductive base electrode and an electrically conductive stencil screen, a high voltage energy source, said base electrode and stencil screen being connected to opposite sides of said energy source, and electrically conductive particles of coating material carried by said base electrode, said stencil screen being interposed between said base electrode and

said substrate, and means for causing relative movement between said stencil screen and said base electrode and maintaining a constant supply of conductive particles beneath said stencil screen.

Claim 16 was rejected by the examiner for obviousness, based on Watson[1] in view of Haas,[2] Rasmussen[3] and Byrd.[4] Watson discloses a method of depositing conductive phosphor particles on a color-television screen. A base electrode is covered with a loose layer of dry phosphor particles. A masking plate or screen serves as the other electrode. Particles move into the electric field between the base electrode and the screen. Some particles touch the screen, acquire an opposite charge, and move back to the base electrode, while others find their way through the screen holes to the substrate, all as described by appellant for the claimed printing process. The substrate television screen in Watson is coated with an adhesive for holding the particles.

Haas and Byrd teach the deposition of particles on a substrate by the use of an electrostatic field. A back electrode is placed behind the substrate and a single electric field is used. The screens do not serve as electrodes. Since appellant's specification described such arrangements as prior art, there is no need to discuss these references further.

Rasmussen discloses electrostatic color printing wherein liquid color particles are atomized to a fine mist, electrically charged and moved through a screen to a substrate, behind which is a "main electrode." The reference states: "The stencil * * * may consist either of insulating or of conductive material and in the latter case may be connected with a voltage divider which gives to the stencil its intermediate potential in relation to the electrostatic field between the main * * * electrodes * * *."

1. U.S. Patent 2,940,864, June 14, 1960.

2. U.S. Patent 2,787,556, April 2, 1957.

3. Danish Patent 81,920, Sept. 17, 1956.

4. U.S. Patent 3,321,768, May 23, 1967, filed May 12, 1960.

While the examiner relied on Watson, Haas, Rasmussen and Byrd, and the board affirmed on this ground, the board was of the view that Watson and Haas alone or Watson and Rasmussen alone would be enough to render claim 16 unpatentable for obviousness.

It will be seen that claim 16 defines a two-field system, utilizing a field between the ink supply and the screen and a field between the screen and the object to be printed.

Appellant does not urge that Watson is taken from a nonanalogous art but instead points out the improvement his invention represents over Watson. Appellant correctly points out that Watson has no second electric field, as required by claim 16. It is our view, however, that Rasmussen clearly suggests the two-field technique in the language quoted above from that reference. We therefore affirm the board's decision as to claim 16.

Claims 14, 17, 20 and 21 present no significant issues different from those raised with respect to claim 16, and we affirm the board's decision as to those claims as well.

Claim 22, set out above, does not require a two-field system but does recite that the base electrode is "an endless conductive belt" upon which toner particles are placed and which is rotatable so as to maintain a "continuous" supply of particles on the portion of it adjacent the screen.

In light of appellant's disclosure, we take the term "continuous" to pertain to geometric continuity rather than to continuity in time, since the latter interpretation would be inconsistent with the disclosure. It is clear that at some time the particles move off the base electrode to the substrate, and at that time the belt is no longer supplied with toner. Moreover, the specification uses the term in its geometric sense when it states: "The basic printing apparatus consists of a continuous conductive plane base electrode."

Claim 22 stands rejected as unpatentable over Watson in view of McFarlane [5] and Walkup.[6] McFarlane discloses electrostatic printing in which an endless belt is employed. The belt contains a large number of needles, the tips of which are coated with photosensitive material. Appellant correctly points out that the McFarlane apparatus does not utilize a stencil screen. A latent electrostatic image is formed by directing light from the image to be reproduced onto the needle tips, where it is converted to charge. The needle tips are then passed through a toner reservoir where they pick up toner particles. We view it as important that the underside of the belt is a *conductive* strip which serves as an *electrode* in establishing an electric field which moves those toner particles which have acquired charges from the needle tips to the object being printed. McFarlane states: "The needles are all set in a conductive member or film which is adapted along with a plate or other conductive film to form an electrostatic field therebetween." With reference to a particular figure of his drawing, McFarlane says: "An endless conveyor 61 is shown comprising a flexible conductive film or strip 63."

Walkup discloses the use of an endless belt to carry a continuous layer of toner particles for use in electrostatic printing. Since the Walkup belt appears to be nonconductive, the reference does not add significantly to the disclosures of Watson and McFarlane.

We fail to see any significant difference between the endless conductive belt with the means for applying a layer of toner particles on it, as recited in the claims, and the endless conductive belt of McFarlane, which similarly serves as

5. U.S. Patent 3,220,831, Nov. 30, 1965, filed Aug. 6, 1962. The examiner also cited McFarlane's U.S. Patent 3,220,833, Nov. 30, 1965, filed Aug. 6, 1962, but the board viewed this reference as merely cumulative.

6. U.S. Patent 3,251,706, May 17, 1966, filed Jan. 4, 1954.

a field-producing electrode for moving the particles to the object being printed. While the toner particles in McFarlane may not be in a continuous layer, and while he does not use a conductive screen stencil, we view those aspects of McFarlane not as deficiencies but as improvements, because, as stated in McFarlane, they completely eliminate the need for the screen. We do not believe that it would require more than ordinary skill to remove the photosensitive needles, cover the belt with a continuous layer of toner, and use a conductive screen, as in Watson, instead. Such modification would have been apparent from routine consideration of the two references.

We find no error in the board's decision concerning claim 22. Claims 18, 19, 23 and 24 do not in our opinion raise any substantial issues beyond those involved in claim 22. The board's decision is therefore affirmed as to those claims.

Claim 12 is somewhat different from the previously discussed claims in that it recites "means for causing relative movement between said stencil screen and said base electrode." This claim, like claim 22, stands rejected on Watson, McFarlane and Walkup. It is true, as pointed out by appellant, that the prior art of record teaches only synchronous, not relative, movement between the belts and the members toward which the toner particles move. Again, however, we view synchronous motion as an improvement in that it avoids the necessity of making and breaking the electrical circuit for each printing operation, a clear advantage in such applications as label printing, where an image is repeatedly printed on a long strip or roll. We think it would involve no more than ordinary skill to use the make-and-break, stationary screen arrangement of Watson with a moving belt electrode such as shown in McFarlane. The decision of the board is accordingly affirmed as to claim 12.

Affirmed.